O
JS-6

# United States District Court
# Central District of California

| | |
|---|---|
| DELFINA MENESES,<br><br>  Plaintiff,<br><br>  v.<br><br>DRIFTWOOD HEALTHCARE &<br>WELLNESS CENTER, LLC et al.,<br><br>  Defendants. | Case № 2:25-cv-01722-ODW (JPRx)<br><br>**ORDER GRANTING MOTION TO REMAND [19]; AND DENYING AS MOOT MOTION TO COMPEL ARBITRATION [38]** |

## I.   INTRODUCTION

Plaintiff Delfina Meneses filed this putative wage and hour class action in state court against Defendants Driftwood Healthcare & Wellness Center, LLC ("Driftwood"), Nursa, Inc. ("Nursa"), and J&L Health Solutions LLC ("J&L"). (Notice Removal ("NOR") Ex. 1 ("Compl."), ECF Nos. 1, 1-3.)  Nursa removed the action under the Class Action Fairness Act.  (NOR ¶ 13.)  Meneses now moves to remand for lack of subject matter jurisdiction.  (Mot. Remand ("Motion" or "Mot."), ECF No. 19.)  For the reasons below, the Court **GRANTS** the Motion.[1]

---

[1] After carefully considering the papers filed in support of and in opposition to the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; L.R. 7-15.

## II. BACKGROUND

Meneses alleges that she worked for Driftwood, Nursa, and J&L in Santa Cruz County, California as an hourly-paid, non-exempt employee from October 2024 to December 2024. (Compl. ¶ 7.) Nursa provides a platform for health care professionals to perform services for third parties as independent contractors and tracks their work shifts and payments received for each shift. (Decl. Jared Roberts ISO NOR ("Roberts Decl.") ¶¶ 2, 7, ECF No. 1-1.) Meneses alleges that Driftwood, Nursa, and J&L did not pay minimum, straight time and overtime wages, provide meal and rest breaks, timely pay final wages at termination, provide accurate wage statements, and reimburse business expenses. (Compl. ¶¶ 31–94.)

On January 27, 2025, Meneses filed this putative class action against Driftwood, Nursa, and J&L. (*Id.* ¶ 1.) The putative class includes Meneses and "[a]ll persons who worked for any Defendant in California as an hourly-paid worker or non-exempt employee at any time during the period beginning four years before the filing of the initial complaint." (*Id.* ¶ 24.) Meneses, on behalf of herself and the putative class, asserts eight causes of action under the California Labor Code ("Labor Code") and California Business and Professions Code for (1) failure to pay minimum and straight time wages; (2) failure to pay overtime wages; (3) failure to provide meal periods; (4) failure to authorize and permit rest periods; (5) failure to timely pay final wages at termination; (6) failure to provide accurate itemized wage statements; (7) failure to indemnify employees for expenditures; and (8) unfair business practices. (*Id.* ¶¶ 31–82.) Meneses seeks recovery of all unpaid wages, statutory, uncompensated business expenses, incurred interests, costs, and attorneys' fees, but does not specify a total amount of damages. (*Id.*, Prayer for Relief ¶¶ 1–48.)

On February 27, 2025, Nursa removed the action to this Court under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). (NOR ¶¶ 1, 13). Subsequently, Nursa and J&L filed answers. (Answers, ECF Nos. 16, 20.) Meneses later dismissed Driftwood from the action without prejudice. (Notice Dismissal, ECF No. 31.)

On March 14, 2025, Meneses moved to remand for lack of subject matter jurisdiction. (Mot. 1–2.) On March 24, 2025, Nursa filed an opposition to the motion. (Opp'n Mot. ("Opp'n"), ECF No. 27.) As Meneses noticed the hearing for April 14, 2025, her reply was due on March 31, 2025. *See* C.D. Cal. L.R. 7-10. However, on April 1, 2025, Meneses filed a late reply. (Reply ISO Mot., ECF No. 28.) At Nursa's request, the Court struck the filing.[2] On April 11, 2025, Nursa moved to compel arbitration. (Mot. Compel Arbitration ("MTC"), ECF No. 38.)[3]

### III. LEGAL STANDARD

Federal courts are courts of limited jurisdiction, having subject matter jurisdiction only over matters authorized by the Constitution and Congress. U.S. Const. art. III, § 2, cl. 1; *e.g.*, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). CAFA grants federal courts jurisdiction over class actions when (1) the putative class exceeds 100 members; (2) at least one putative class member is a citizen of a state different from any defendant (minimal diversity); and (3) the amount in controversy exceeds $5 million. 28 U.S.C. §§ 1332(d)(2), (5).

"[T]he burden of establishing removal jurisdiction remains . . . on the proponent of federal jurisdiction." *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006). When the amount in controversy is "unclear or ambiguous" from a plaintiff's

---

[2] After the Court struck Meneses's reply, her counsel filed a Request to Consider Late-Filed Reply. (Req., ECF No. 37.). Meneses's counsel assert that they mistakenly thought they had an extra day to file the reply because it was originally due on Cesar Chavez Day. (*Id.* at 1.) Meneses's counsel erred in two ways. First, Cesar Chavez Day is not a federal holiday. *Compare* Fed. R. Civ. P 6(a)(6)(C) (stating that a state holiday is a "Legal Holiday" only "for periods that are measured *after* an event" (emphasis added)), *with* C.D. Cal. L.R. 7-10 (stating that reply briefs are due "not later than fourteen (14) days *before* the date designated for the hearing of the motion" (emphasis added)). Second, even if it was a "Legal Holiday," the reply would have been due the Friday before the holiday. *See* Hon. Otis D. Wright, II Standing Order § VII.A.1., https://www.cacd.uscourts.gov/honorable-otis-d-wright-ii. In any event, as Meneses's stricken reply would not alter the Court's analysis, the Court denies Meneses's request. (ECF No. 37.)

[3] In connection with the Motion to Remand, the parties ask the Court to take judicial notice of certain documents. (*See* Pl.'s Req. Judicial Notice, ECF No. 19-2; Def.'s Req. Judicial Notice, ECF No. 27-1.) As the Court reaches its conclusions without relying on those documents, it denies those requests. *See Migliori v. Boeing N. Am., Inc.*, 97 F. Supp. 2d 1001, 1003 n.1 (C.D. Cal. 2000) (declining to take judicial notice of exhibits that "do not affect the outcome of" the motion).

state court complaint, "the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold." *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 962–63 (9th Cir. 2020).

"[N]o antiremoval presumption attends cases invoking CAFA," as Congress enacted the statute "to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 82 (2014). If the court questions or the plaintiff challenges the defendant's alleged amount in controversy, "both sides submit proof and the court decides, by a preponderance of the evidence," whether the requirement is met. *Id.* at 88. When challenged, the defendant "is permitted to rely on 'a chain of reasoning that includes assumptions'" to calculate the amount in controversy. *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019) (quoting *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1199 (9th Cir. 2015)). The assumptions, however, "cannot be pulled from thin air," and "defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Ibarra*, 775 F.3d at 1197, 1199.

## IV.   DISCUSSION

Nursa asserts that removal is proper because there are more than 100 putative class members, minimal diversity is satisfied, and the amount in controversy exceeds $5 million. (NOR ¶¶ 2, 13–17, 21–26, 53.) Meneses does not dispute that the putative class comprises more than 100 members or that the parties are minimally diverse. (Mot. 4–5.) Instead, Meneses argues that Nursa has not established the requisite amount in controversy. (*Id.*)

Nursa disagrees. (*See* Opp'n.) First, Nursa argues that Meneses's jurisdictional challenge is facial, so it need only (and does) establish the amount in controversy under the lower "plausibility" standard. (*Id.* at 15–17.) Second, Nursa asserts that, even if

Meneses brings a factual challenge, the amount in controversy exceeds the threshold under the higher "preponderance of the evidence" standard. (*Id.* at 18–22.)[4]

The Court first addresses which standard applies, then it considers whether Nursa has satisfied that standard.

## A. Applicable Standard

Nursa contends that Meneses mounts a facial, as opposed to a factual, challenge to the Court's jurisdiction. (*See id.*)

A party may challenge jurisdictional allegations by launching either a "facial" or a "factual" attack. *Salter*, 974 F.3d at 964. When a plaintiff brings a facial challenge, the plaintiff accepts the defendant's allegations in the notice of removal as true but argues that the allegations "are insufficient on their face to invoke federal jurisdiction." *Id.* at 964 (quoting *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014)). In response to this challenge, the defendant is not required to present supporting evidence of its allegations. *Id.* at 964–65. Rather, the court accepts the defendant's allegations as true and draws all reasonable inferences in favor of the defendant to determine "whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Id.* at 964. By contrast, when a plaintiff brings a factual challenge, the plaintiff contests the truth of the allegations "usually by introducing evidence outside the pleadings." *Id.* In response to this challenge, the defendant must prove the amount in controversy "under the same evidentiary standard that governs in the summary judgement context." *Id.* at 963. In other words, the defendant "bears the burden of

---

[4] Nursa also asserts that Meneses violated Local Rule 7-3 by failing to meet and confer in good faith prior to Meneses filing the Motion. (Opp'n 13–14.) On March 4, 2024, Meneses's counsel sent a letter to Nursa's counsel regarding the Motion. (Decl. Anthony G. Ly ("Ly Decl.") ¶ 3, ECF No. 27-2.) Then, on March 11, 2025—three days before filing the Motion—counsel had a brief call to discuss the merits of the Motion. (*Id.* ¶ 5.) Local Rule 7-3 requires that a "conference must take place in person, by telephone, or via video conference at least 7 days prior to the filing of the motion." A letter does not qualify. Meneses's counsel should have waited seven days after the parties' phone call before filing the Motion. However, Nursa fails to show it "has suffered . . . prejudice as a result of the failure to comply" so the Court "elects to consider the merits of" the motion." *CarMax Auto Superstores Cal. LLC v. Hernandez*, 94 F. Supp. 3d 1078, 1088 (C.D. Cal. 2015) (collecting cases).

1  proving by a preponderance of the evidence" that each jurisdictional requirement has
2  been met. *Leite*, 749 F.3d at 1121.

3  An attack is factual when a party sufficiently disputes the factual basis of the
4  allegations. *See Harris v. KM Indus., Inc.*, 980 F.3d 694, 700 (9th Cir. 2020). In *Harris*,
5  the plaintiff filed a putative wage and hour class action against his former employer and
6  the employer removed it to federal court. *Id.* at 696–98. The plaintiff argued that
7  removal was improper because the defendant "inflate[d] the amount in controversy by
8  relying on unfounded assumptions" when calculating the meal and rest break violation
9  rates. *Id.* at 698 (internal quotation marks omitted). The plaintiff further argued that
10 the defendant unreasonably "assumed every type of injury alleged in the complaint was
11 suffered by each [putative class member]," criticizing the defendant's failure to consider
12 key factors like shift length in their calculations. *Id.* at 700 (alteration in original). The
13 court held that, even though the plaintiff "did not introduce evidence outside the
14 pleadings," he raised a factual challenge by "making a reasoned argument as to why
15 any assumptions on which [the defendant's jurisdictional allegations we]re based [we]re
16 not supported by evidence." *Id.*

17 Conversely, when a party does not attack the truth of the allegations and only
18 attacks their "form," the attack is facial. *See Salter*, 974 F.3d at 961, 964. In *Salter*,
19 after the defendant removed the class action, the plaintiff challenged removal, but did
20 not challenge the truth of the defendant's allegations or offer evidence to contest it. *Id.*
21 at 964. The plaintiff "did not question" the defendant's calculated number of
22 contractors who worked for defendant, "[n]or did he dispute" the defendant's estimates
23 of deductions it made. *Id.* Rather, the plaintiff attacked only the form of the allegations
24 by arguing that they stem from a business record that fails the "best evidence rule,"
25 because the defendant did not produce the record. *Id.* at 963–64. The court held that
26 the plaintiff "did not challenge the rationality, or the factual basis, of" the defendant's
27 assertions, so the plaintiff's challenge was facial. *Id.* at 965.

28

Here, Meneses raises a factual attack to Nursa's proposed amount in controversy because she questions the "rationality" and "factual basis" of Nursa's calculations, *id.*, and offers evidence outside the pleadings to contest the allegations, (*see* Mot.). Nursa alleges that the amount in controversy for the meal and rest period violations is $377,000 by assuming one violation per week for all shifts exceeding five hours. (NOR ¶ 43.) Meneses contends that the meal and rest period violation rates "are pulled from thin air and are directly contrary . . . to the Complaint." (Mot. 7.) Like the plaintiff in *Harris*, Meneses challenges the factual accuracy of the allegations by arguing that Nursa "provides no evidence of the average number of shifts worked by class members per week" when calculating the meal and rest break violation rates. (*Id.*)

Meneses further argues that Nursa's proposed waiting time penalties are unreasonable. (*Id.* at 8.) To calculate waiting time penalties, Nursa assumes that employees were terminated after they stopped using Nursa's platform for a certain period. (NOR ¶ 47.) Meneses contends that Nursa's assumption that mere inactivity on the platform is "the legal equivalent of a discharge or termination" is "without legal authority or factual evidence." (Mot. 8–9.) Unlike the plaintiff in *Salter*, who did not question the defendant's calculations or offer evidence to refute the underlying assumptions, Meneses questions Nursa's calculations and introduces Nursa's Terms of Service Agreement ("Agreement"), accepted by all employees, as evidence to dispute them. (*See* Decl. Fawn F. Bekam ISO Mot. ("Bekam Decl.") Ex. A ("Agreement"), ECF No. 19-1.) Meneses argues that the "Agreement directly undermines [Nursa's] assumption" that mere inactivity on Nursa's platform means an employee was terminated, because the Agreement requires "fifteen (15) days' written notice" for unilateral termination, absent material breach. (Mot. ¶ 9; *see* Agreement § 9.1.)

As Meneses disputes Nursa's alleged amount in controversy by contesting its truth and attacking its substance, rather than form, she lodges a factual challenge to Nursa's notice of removal. Accordingly, Nursa bears the burden "to show, by a

preponderance of the evidence, that the amount in controversy exceeds the $5 million jurisdictional threshold." *Harris*, 980 F.3d at 699.

**B.      Amount in Controversy**

Meneses does not specify the amount of damages in the Complaint, but seeks recovery for unpaid (1) minimum and straight time wages; (2) overtime wages; (3) meal period wages; (4) rest period wages; (5) compensation at the time of termination, including statutory waiting time penalties; (6) statutory wage statement violation penalties; (7) business expenses incurred by employees as a result of their discharge; and (8) interest, costs, and attorneys' fees. (Compl., Prayer for Relief ¶¶ 1–48.)

Nursa asserts that the amount in controversy is at least $9,799,375, broken down into the following categories: (1) waiting time penalties: $6,552,000; (2) meal period violations: $377,000; (3) rest break violations: $382,000; (4) failure to pay overtime wages: $304,500; (5) wage statement violations: $160,000; (6) failure to reimburse business expenses $64,000; and (7) attorneys' fees: $1,959,875.[5] (Opp'n 27.)

Meneses argues that Nursa fails to meet its burden of establishing the requisite amount in controversy because its meal and rest period calculations, waiting time penalty calculations, and attorneys' fees estimates are speculative, unreasonable, and arbitrary. (Mot. 6–10.) If Nursa's waiting time penalty calculations can be credited toward the amount in controversy, then the $5 million jurisdictional requirement will be satisfied even without considering other violation rates. (*See* Opp'n 27 (calculating $6,552,000 in controversy for that claim).) Conversely, because Nursa estimates the amount in controversy of the remaining claims total around $3.25 million, those claims on their own do not exceed the required threshold. Accordingly, the Court considers only Meneses's challenge to Nursa's waiting time penalties calculation.

---

[5] The amount in controversy Nursa offers in its opposition differs from that offered in its notice of removal. (*See* NOR ¶ 53.) Because Nursa cannot show that the amount in controversy exceeds $5 million using the figures proposed in either filing, the Court evaluates whether it has jurisdiction using the higher proposed figures in the opposition.

Labor Code section 203 sets a penalty for employers that willfully fail to pay, in accordance with sections 201, 202 and 205, any wages owed to employees at the time of discharge. Cal. Lab. Code § 203(a). The penalty accrues at the same rate the wages were paid starting from the date the wages were due until an action is commenced. *Id.* The maximum penalty is thirty days of additional wages. *Id.*

In measuring the amount in controversy, the removing defendant may rely "on a chain of reasoning that includes assumptions to satisfy" the amount in controversy, as long as those assumptions are reasonable. *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022). Such assumptions cannot be "pulled from thin air" or be "mere speculation and conjecture." *Ibarra*, 775 F.3d at 1199, 1197. "Conclusory allegations . . . are insufficient" to satisfy the burden of proof. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090–91 (9th Cir. 2003).

In her Complaint, Meneses alleges that she worked for Nursa "from approximately October 2024 to approximately December 2024," that Nursa "terminated" her employment and "willfully failed and refused to timely pay [her] and some of, but not necessarily all of, the Class all final wages due at their termination," and that Nursa's failure to pay "was not a single, isolated incident, but was instead consistent with [Nursa's] practices." (Compl. ¶¶ 7, 14, 18.) Meneses does not allege how or when she was terminated. (*See generally id.*)

Based on these allegations, Nursa argues that the amount in controversy on the waiting time claim is $6,552,000, consisting of penalties of $30 per hour for 8 hours a day for 30 days (i.e., $7,200 per worker), for a total of 910 hourly-paid workers. (Opp'n 22.) Nursa bases these calculations on several assumptions.

First, Nursa offers a theory of termination. (*Id.* at 19.) Nursa's theory is that, for purposes of the amount in controversy, a worker is terminated if that worker did not use Nursa's platform for a certain number of days. (*Id.*) Meneses alleges that she stopped working for Nursa in December 2024 and initiated this action on January 27, 2025. (Compl. ¶ 7.) Meneses does not allege a termination date, so Nursa assumes that she

9

must have considered herself terminated as of the date of the filing, at the latest. (Opp'n 19.) Nursa also assumes that, because Meneses does not allege a theory of termination, it can assume that Meneses was terminated based on inactivity alone. (*Id.*) At most, Meneses had not used Nursa's platform for fifty-seven days before Nursa's assumed termination date. (*Id.*) Therefore, Nursa contends "it is reasonable to assume that when any hourly-paid worker ceases to work any shift for at least 57 days, they are considered 'terminated' within the meaning of Labor Code section 203 and are therefore entitled to waiting time penalties." (*Id.* at 20.)

Second, Nursa uses sixty days as a benchmark to see how many employees have not completed a work shift for at least that duration to estimate a total number of terminated employees. (*Id.* at 22.) Based on its employment records, Nursa identifies 1820 employees that have not used Nursa's platform for at least sixty days to work a shift in California. (*Id.*) Third, Nursa assumes that fifty percent of terminated employees are eligible for waiting time penalties. (*Id.*) Fourth, and last, Nursa assumes that those eligible for waiting time penalties are owed the maximum amount—$7,200, or $30 per hour for 8 hours a day for 30 days. (*Id.*) In total, Nursa's chain of assumptions places $6,552,000 in controversy on waiting time penalties. (*Id.*)

Meneses argues that Nursa's waiting time penalty calculations are unreasonable and lack evidentiary support, contesting every step of Nursa's chain of reasoning. (Mot. 8–10.)

Nursa's first assumption is unreasonable, so the Court need not reach the reasonableness of Nursa's remaining assumptions. Nursa's termination theory fails because there is a gap in reasoning that Nursa does not bridge with evidence or reasonable inferences. When the defendant "rel[ies] on the factually unsupported and unreasonable assumptions," it "exaggerate[s]" the amount in controversy, thus failing to carry the burden of proof by a preponderance of evidence. *Harris*, 980 F.3d at 702 (rejecting defendant's evidence where defendant relied on a "factually unsupported and unreasonable assumption" to estimate the number of potential class members).

1    Here, after Meneses contested Nursa's theory of termination, Nursa had the
2 opportunity to show the reasonableness of its assumptions by offering competent proof.
3 (Mot. 9.)  Yet Nursa fails to produce any nonspeculative justification for *why* "it is
4 reasonable to assume that when any hourly-paid worker ceases to work any shift for at
5 least 57 days, they are considered terminated." (Opp'n 20.)  Instead, Nursa wrongly
6 claims the theory appears in the Complaint.[6] (*Id.* at 19.)  Nursa further attempts to
7 support the reasonableness of its termination assumption by extending the inactivity
8 period to 120 days and assuming that only half of the calculated number of employees
9 were terminated.  (*Id.* at 20.)  Despite this purportedly "conservative" estimate, Nursa
10 does show not why 120 days is reasonable, why half of the employees should be
11 assumed to have been terminated, or why its overall theory of termination should be
12 found reasonable.  Ultimately, it is Nursa's burden to offer proof that will bridge the
13 gap between *termination* and *the reason for termination*.  *See Harris*, 980 F.3d at 701
14 ("The district court should weigh the reasonableness of the removing party's
15 assumptions, not supply further assumptions of its own.").

16    The only case that Nursa offers to support the reasonableness of its termination
17 theory is *Moreno v. JCT Logistics, Inc.*, No. 5:17-cv-02489-JGB (KKx), 2018 WL
18 1415179 (C.D. Cal. Mar. 21, 2018).  (Opp'n 20.)  In *Moreno*, the defendant assumed,
19 for the purpose of establishing the amount in controversy under CAFA, that
20 independent contractors who did not receive payment within thirty-five days prior to
21 the filing of the complaint were terminated.  2018 WL 1415179, at *3.  *Moreno* is
22 inapposite, however, because the court never weighed the reasonableness of that
23 assumption since the plaintiff did not contest it.  *See id.*  Here, by contrast, Meneses
24 challenges the reasonableness of Nursa's assumption that "class members were
25 terminated simply by not using Defendant's platform for 60 days." (Mot. 5.)  Had
26 Meneses not challenged Nursa's reasoning, Nursa's sole requirement would have been

---

[6] Despite Nursa's contentions, (Opp'n 19), Meneses does not actually suggest that she was terminated because she stopped using Nursa's platform, (*see* Compl.).  Nowhere in the Complaint does Meneses allege a reason for her termination, an event that caused it, or an incident that preceded it.  (*See id.*)

to provide "a plausible" assumption without "evidentiary submissions." *See Dart Cherokee*, 574 U.S. at 89. As Meneses factually challenges the allegation, Nursa must prove that each of its assumptions are reasonable, which it fails to do.

Another case with a theory of termination like Nursa's illustrates the deficiency in Nursa's evidence and reasoning. In *Gonzalez v. Barnard Construction Company*, the defendant assumed that any employee "who did not receive a paycheck in the last 42 days . . . was terminated," and attributed waiting time penalties to them to establish the amount in controversy. No. 22-cv-00534-AJB (KSCx), 2022 WL 17061065, at *4 (S.D. Cal. Nov. 17, 2022). There, unlike here, the defendant supported its assumption with a declaration from its vice president of finance, who explained that "based on his experience, 'it is extremely likely (~95% or more) that an employee who does not receive a paycheck for a six-week period has separated employment.'" *Id.* The court found the assumption reasonable, since the "[d]efendants' calculations are based on its vice president of finance's experience with and analysis of employee records." *Id.*

Here, Nursa offers no such evidence. (*See generally* NOR; Opp'n.) In support of its calculations, Nursa provides a declaration from its chief administrative officer, who confirms the numbers retrieved from Nursa's internal reports, but does not provide any analysis or explanation of why it is reasonable to use those numbers. (*See* Roberts Decl.) While the declaration supports that there were approximately 1,600 workers in California who stopped using Nursa's platform for 90 days or more, (*id.* ¶ 7), the Court cannot infer that it is reasonable to assume *any* of those 1,600 workers were terminated based on Nursa's proffered theory of termination.

Further, according to the Agreement between Nursa and its workers, absent mutual agreement or material breach, a party may unilaterally terminate the Agreement only upon providing a fifteen-day written notice. (Mot. 9; Agreement § 9.1.) Nursa does not proffer evidence of mutual agreement, material breach, or written notice to support any of the claimed 1,600 terminated workers. (*See* NOR, Opp'n.) Hence, unlike the defendant in *Gonzalez*, Nursa not only fails to provide evidence to support

its termination theory but also goes a step further by assuming a theory that contradicts its own Agreement between it and the putative class members. This deviation from the Agreement renders Nursa's theory of termination even more speculative.

For these reasons, the Court finds that Nursa's termination theory is not a reasonable assumption. However, Meneses explicitly alleges that she was terminated and that Nursa failed to pay time wages due at her termination. (*See* Compl. ¶ 14.) Accordingly, as to the claim for waiting time penalties, Nursa, at most, demonstrates an amount of controversy with respect to only Meneses's individual claim, totaling $7,200. (*See* Opp'n 22 (calculating individual waiting time penalties at $7,200 per person).)

Nursa has shown, at most, $7,200 in controversy for the waiting time penalties claim. Even crediting Nursa's estimated amount in controversy on all remaining claims, Nursa shows an amount in controversy of only $3,254,575. Therefore, Nursa fails to carry its burden of establishing by a preponderance of the evidence that the amount in controversy exceeds $5 million, as required for CAFA. Consequently, this Court lacks subject matter jurisdiction over this action.

## V.   CONCLUSION

For the reasons discussed above, the Court **GRANTS** Meneses's Motion to Remand, (ECF No. 19), and **REMANDS** this case to the Superior Court of California for the County of Los Angeles, Case No. 25STCV02221, located at 111 North Hill Street, Los Angeles, California 90012. Consequently, the Court **DENIES** Nursa's Motion to Compel as ***moot***. (ECF No. 38.)

**IT IS SO ORDERED.**

July 24, 2025

_____
OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE